This is a time set for argument in Medina Tovar v. Zuchowski. I want to take a minute at the beginning to say that the Ninth Circuit joins the nation in mourning the passing of Justice Ruth Ginsburg. We had a presentation panel on Monday that included Judges McKeon and Watford and Judge Owens and Judge Owens and Judge Watford clerked for Justice Ginsburg and Judge McKeon who worked many years and she was a friend to many of us on the court. So we wanted to express our sorrow and I wanted to express my thanks to Judges McKeon and Watford for that very, very great panel of remembrances and some good stories. Council, today we are going to proceed as I think you've been instructed. I'll give you each about three minutes to make an opening statement and I will interrupt and I will call on judges to ask questions. So with that, Mr. Smith, you may proceed. Thank you, Your Honor, and may it please the court, Philip Smith on behalf of the appellants Maria Medina Tovar and her husband Adrian Alonzo Martinez. Your Honor, when Ms. Medina Tovar was 12 years old, she was raped by a stranger at 9th point in her own home in her own bedroom. Her sense of safety and security was taken from her. Her entire family at that time was undocumented. They were all terrified and yet they came forward. They reported the crime to the police and to prosecute the individual responsible. Congress, in the year 2000, passed the U visa statute to help victims exactly like Ms. Medina Tovar, who had been victims of a serious crime, who cooperated with law enforcement and who had been victims of a serious crime. Ms. Medina Tovar applied for the U visa status. She demonstrated she met all the eligibility requirements. She was approved for her U visa. Then, as the statute permitted, she applied for her husband for accompanying or following to join to receive the same status. His U visa application was denied because the agency regulation that had been passed in 2007 required the marital relationship to have been in existence at the time the principal petitioner applied for the U visa status. That regulation, in our judgment, violated the clear intent of Congress, which had been expressed through the use of that term throughout the Immigration and Nationality Act, where the term accompanying or following to join had always included a derivative spouse where the marriage was in existence at the time the principal was approved for the status. And that was across the spectrum of immigration law. Immigrants, non-immigrants, asylees, refugees, it had always included a spouse where the marriage was in existence at the time the principal was granted or approved for the status. The agency regulation, for the first time, restricted that category and required the relationship to predate the principal's finding of the application. We think under Chevron step one, that's clearly violated congressional intent. Under step two, we don't think, we think it was not reasonable. And if I might just to briefly touch on the mootness question that's been raised, today, right now, Mr. Alonzo has no status. He's not authorized to work. He is subject to being detained and placed in removal proceedings at any time. So this case is not moot. And that's our position. Thank you. Judge McEwen has the first question. You're muted. Mr. Smith, I understand your position today and in your brief that the statute is not ambiguous. You look at the language of the statute and then full stop. We wouldn't need to go any further. But were we to look further than the plain language of the statute, there are a number of cases that post-date the U visa statute, which was passed in 2000. What interpretive value do those cases have in your view? Well, we think that the court can look at the text, the history and including how the term has been interpreted by case law, the structure of the statute, and the purpose of the statute. And so to the extent those cases, and when I say those cases, I'm not sure exactly which case you're referring to, but I'm not aware of any case that contradicts our position other than this case. Well, the case I'm referring to, there are a number of out of circuit cases, but your position is that there's no case that's been decided that would be in opposition to your position. Is that right? That's correct, Your Honor. Thank you. Judge Callahan has the next question. Yes, I have a question. We got paperwork today that I guess it would be Adrian has applied for an I-485 and that's something that's going to come up on that. My question on that is, and that would also go off of Ms. Tobar, correct? What's Ms. Tobar's status now? Is she still an LPR or is she a citizen? She's still a permanent resident, Your Honor. Okay. What is an I-485? What does that show? So that is an application for adjustment of status. So he's applied to become a permanent resident and the requirement is because he wasn't granted the U visa status, they have to show extreme hardship to her if he is not approved. And so that application... If he does get approved, I understood the government filing to say that we'd hear in five weeks or something like that. If he were approved, would it be moot then? Well, it's our position it wouldn't be moot, Your Honor. And that's because even permanent resident status is not the ultimate goal. So the ultimate goal is citizenship. But under the U visa, he would have only gotten the LPR. He wouldn't have gotten citizenship. That's right. But had it been, in our view, properly approved, he would have received his permanent resident status sooner. And so his waiting period to be able to apply for citizenship would be shortened. And that would be a considerable benefit to him. And that is something that... And we compare a lot to the asylum and the refugee status. And for the asylum and refugees, when they are granted permanent resident status, they are retroactively approved to the point where the refugee enters the country for asylum. But asylum and refugee is different than a U visa. I mean, a U visa is this kind of creature that is for people that are crime victims. And there are cases out there that say that the government doesn't have to treat... That they can make the requirements what they want to make them. And so it's hard to show an equal protection if one statute treats people differently than, say, asylum or refugee. Am I wrong on that? Well, I think that's right. I mean, we've had difficulty making that equal protection argument. But this isn't even an equal protection argument. This is before we get there. If the regulation was improper, if it violated the Tenet of Congress, then the question is, what would be the remedy the district court could grant? And one remedy would be to retroactively approve his permanent resident status to the point that he would have been approved had it properly been adjudicated. And that would shorten his waiting period, which would be a significant benefit to him. Thank you. Judge Mardia has the next question. You need to unmute. I apologize. I was wondering if you could respond to the government's argument when looking at Chevron Step 1 and the potential ambiguity in the test. The government is arguing that because all the authorities that you're pointing to are immigrant in context versus non-immigrant context. Can you please respond to that as to why we shouldn't consider the government's argument? Well, I think, well, one, I guess I would go back to the asylum and refugee, which are not lead to an immigrant to permanent residence. And so the U visa, like those, is an interim step to then, after a waiting period, to be able to apply for permanent residence status. And the regulations expressly in those situations state that the spouse accompanying or following to join is eligible so long as the marriage was in existence at the time the principle was approved. And so those would not be the immigrant context. But certainly in the immigrant context, it's over 75 years of practice and the State Department has regulations and the term to include a spouse as long as that relationship is in existence. In the non-immigrant context, it's never been, it's really never been questioned. So it's not been interpreted differently. It's just not been questioned that as long as that relationship is in existence, when the principle is approved, the spouse is also granted the status. And stepping back from that, it's because Congress wanted to keep families together. And although each non-immigrant category has its own unique requirements for the principle to be eligible in those categories, once the principle of all the non-immigrant, once they satisfy that they are eligible, then the family members themselves, the spouse and the children, they are consistently treated the same across the spectrum of the immigration. I think that's our response. Thank you. Judge Watford has the next question. My only question related to mootness and it's already been addressed. Very well. Judge Bennett, you need to unmute. Counsel, if I understand your argument, you're saying that if your client's I-485 is approved, this case isn't moot because the district court could order the government to sort of retroactively nunk pro-tunk approve the prior application. Are you aware of any court that has ever issued an order like that, ordering the service to nunk pro-tunk approve an application so that the citizenship period is shortened? Because even if it was in reality approved in 2020, somehow it becomes approved in some period three or four years earlier? Well, this specific situation, no, I can't point to anything. So, counsel, if your client gets the I-485, would you want the opportunity to supplementarily brief the issue of whether the case is moot? Well, yes, Your Honor, because our position is it's not. Absolutely. So, putting the I-485 aside, you wrote to the panel in 2019 that the case wasn't moot because Mr. Alonzo remains eligible to seek derivative U visa status. The government wrote in response that the case is moot because Mr. Alonzo is no longer eligible. Maria no longer possesses principal U1 immigrant status as by definition, principal U1 non-immigrant status as by definition she's an immigrant. And the INA specifically excludes non-immigrant from the definition of the term immigrant. Why is the government wrong? And if the government is wrong, why isn't the case moot, even aside from the I-485? Well, I think the government is wrong because Mrs. Tovar receiving her permanent resident status does not preclude Mr. Alonzo from the derivative status. The relationship itself still exists. We would point to, again, the asylum and in the refugee context, where a principal asylee or refugee who is granted status, they then apply for their derivative family members. And they actually, it's a form I-730 application. And on that application form, there's actually four categories that makes them eligible to apply. One is if they've been granted asylum. Two, if they are a lawful permanent resident who was granted asylum. Three, if they're a refugee. Or four, if they are a lawful permanent resident who had been granted refugee status. And so the U visa operates in the same way. Those principals have already obtained, refugees and asylees have already obtained lawful permanent resident status, but they are permitted under the statute to apply for their derivative family members to join them, even though they've already become a permanent resident. And I think, again, stepping back a little bit and looking at the broader purpose, Congress is wanting to unite families and keep the families together. They're not looking to restrict or limit a spouse or a child of a refugee or an asylee or a U visa beneficiary from being able to live together. That also, it's not just for them. It undercuts the purpose of this statute, which is to help law enforcement to prosecute serious crimes by encouraging non-citizen victims to come forward and cooperate and to overcome their fear of, if they have interaction with law enforcement, they risk being deported. And it's not just they themselves that risk being deported, it's their family members. And so if they don't have some sense of security there, then it discourages them from coming forward. And so it undercuts the purpose to limit this in the way that this regulation seeks to do so. And back to your initial question, the fact that the U visa, the principle has become an affirmative resident, it doesn't preclude the derivative from accompanying or filing to join them as long as the relationship was in existence. At the time, the U visa principle was approved and it has to continue to be existence through the derivatives application and adjudication. Judge Collins has the next question. I just want to make sure I understand the scope of your argument. Is it your position that this phrase accompanying or following to join has such a settled meaning that we can decide it at Chevron 1 and that same meaning would apply uniformly at Chevron 1 to every use of this throughout the I. N. A. Yes, your honor. That's that's the way. Yes, that's the way. That's one reason that that would lead you to make the conclusion that step one is because it has universally always had that meaning throughout the I. N. A. Thank you. Judge Press has the next question. Counselor, just to follow up on the question Judge Collins asked, if that is your position that the phrase accompanying or following to join needs to be given the same interpretation across the immigration laws, would that invalidate any other existing regulations in other contexts? So, for example, the refugee provision or the asylum provision or any of those other provisions suspect if that is actually the rule? Well, if you look at the T visa regulations, which were published at the same time as the U visa regulations, they, in our view, suffer from the same flaw as the U visa. So the T visa regulation also, which came out at the same time, requires the relationship to predate the filing of the application. So that would, although it's not before you, it's certainly if you were to rule in our favor on the U visa, I think the T visa would be logical that that would be called into question. What other regulations would be called into question in other contexts, you know? Not that I'm aware, not that I'm aware of any immigrant, non-immigrant refugee asylum. None of those that I'm aware of would be called into question, but the T visa regulation would be because it has the same requirement as the U visa regulation. What about the refugee provision, which is key to commission, would that be called into question? Well, that's the, well, there's the thing with that, your honor, is that functional, functionally, it's the same requirement. And so any principle that applies for status is either in the United States or they're outside the United States. So one or the other. And if they're in the United, and so the accompanying or falling to join definition, meaning, it has to accommodate those two situations. And it does, and it always has, by if the principle is applying from within the United States, then the relationship has to exist at the time the principle is approved, which means they receive and they're granted the status. If they're applying from outside the United States, so a refugee, for example, then the relationship has to exist at the time the refugee is admitted to the country. And that essentially is at the time the refugee receives the benefits of refugee status when they are admitted to the country. And so functionally, there's really not a disconnect there. Neither situation ties eligibility to some earlier date. But it always has to accommodate those two situations, because you're always going to have some people applying from within the United States and some people applying from outside the country. And finally, in terms of your argument that there is a well-settled meaning here, what are the principal sources you would point to to establish that well-settled meaning? Is it the statute? Is it the regulations? Is it some other source of law? We would look to the statute. We would look to regulations for the asylum, the refugee regulations. We would look to the State Department regulations for immigrant visas. We would look to the State Department officials. And we would look to the case law. And maybe the question I missed earlier is that, I mean, this court has looked at this term in decisions, and although this particular issue wasn't the focus of the decision, it noted specifically in the decision that this is the timing to make the person eligible. Is that the time the principal is approved. So Landon Molina from this court, Santiago from this court from the 70s, the Board of Immigration Appeals and Matter of Knowledge from, I think, the 70s. So those decisions, again, they didn't focus on this specific issue, but in fact, they cited that this is the point where the derivative is eligible. When they're accompanying the falling to join, as long as that relationship is in existence at the time the principal is approved. Thank you, Mr. Smith. Thank you, Your Honor. Mr. Smith, do you wish to reserve the remainder of your time for a bottle? No, that's okay. Judge Bumate. Sorry. Counselors, you just said you seem to concede that the spousal relationship has to exist at the time that Ms. Tavar was granted the U visa. Is that correct? That's correct, Your Honor. But where is that temporal limit in the statute? I don't see that in the statute. So why can't the relationship exist even after the visa is granted? Well, I think we would look back to the same support, the regulations, the case law has always required for a company to fall into join, has required that the relationship continue to exist. And in fact, to accompany or follow to join means that relationship has to be in existence. And the regulations recognize that in the asylum and the refugee, and in fact, the U visa regulation. But they have to be in existence at the time of the grant of the visa, but where is that tied to the statutory language? With the statutory language, we would say a company or following to join that that in limitation itself is what requires it. And I think that's what the court held in Santiago. Okay. You search, Thomas. I have one more question. If I may go ahead. So you cited Landon Molina and note seven in Landon Molina says, and I quote, the words accompanying a company and following to join are terms of art defined in the regulations. Unquote. If they're only terms of art per the regulations, how can the statute itself possibly be clear and unambiguous? Yes. Well, it would be our position that if those regulations were part of the definition prior to Congress using the term, and it was understood that then when Congress uses that term, they are aware that these regulations exist and they aware of how it's being used. And so our position would be that that it makes it clear, not just from the text, but if you also look at the history and the usage. And I might briefly, I'm sorry. No, go ahead. Go ahead. Well, I was just wanting to briefly say, even if you were to find it ambiguous, then you still have to go to, is the regular under Chevron step two, is it reasonable? And to be reasonable, the agency has to give a reason. And here, and as the Supreme Court just said this summer, the reason you look, you test the agency action by the reason given at the time they make the, they take the action. And in this regulation, they actually gave no reason. They simply said, well, that's what the statute requires. But they didn't say this is ambiguous. They didn't try to weigh any competing interests. They just said, this is what the statute requires. And so if they're not providing a reason, then that in our view is arbitrary and capricious. So the, the, uh, the obvious reason that the government has proffered, uh, whether it's a compelling enough reason or not as a different question to prevent marriage fraud, your view is we can't even consider that. Well, that's right. And if you were going to, there'd have to be some evidence in the record that that was what that was the reason. And there is none. Thank you. Thank you, Mr. Smith. We'll hear from, uh, Mr. Goldsmith. Thank you for joining us at this late hour on the East Coast. And, uh, please, please proceed. Thank you, Your Honor. I'm pleased to court Aaron Goldsmith on behalf of the government. We think the threshold issue in this case is whether or not there was a live case or controversy. In our view, the sole question is whether or not the plaintiff, Mr. Alonzo Martinez, was eligible for derivative U visa for the period of time from October 1st, 2015 through July 3rd, 2019. And the reason for that is, uh, he can't, by regulation, he can't derive U visa status in the first instance from, uh, his wife because after July 3rd, she no longer had U visa status. So there's this basic issue of there was a window of time and that window has now closed. Uh, there are no exceptional circumstances that would justify the application of the capable of repetition yet evading review exception. Uh, and with respect to this idea of, uh, retroactively providing some relief, uh, we don't see that as the relief being requested in the first instance and we're not aware of authority for that type of relief. Uh, if I could briefly address the merits, the majority of panel opinion correctly found that the statute is silent as to when the relationship, marital relationship must exist, correctly found that the agency filled that gap. And I'd like to make two points in support of that. The first is in 2013, Congress reauthorized the violence against women act and amended the U visa statute, spanning it somewhat. Uh, at that time it was aware of the 2007 regulation. That's an issue that, that we were just discussing and it left that definition undisturbed. Uh, then the second point is I just wanted to point out the unique nature of the U and T visa programs and that, uh, they allow someone who has been living in this country potentially unlawfully for an extended period of time, maybe even years to not only obtain status, but to, uh, ultimately obtain a green card and to petition on behalf of a spouse or family member. So that unique nature of these two programs helps explain why the agency took the actions that it did. And now Your Honor, I'd like an opportunity to address your questions. Uh, Judge Vomittee, do you have a question? Yes. Thank you, Chief. Uh, Council, where in the statute does it say that an alien may only, uh, obtain derivative status from a current visa holder, U visa holder? So that's not together, uh, lead to that conclusion that we, we cited. Uh, there must be by regulation, uh, 214.14 F4, a qualifying relationship with a principal U, uh, uh, U visa holder. And it can't be that relationship if there's no qualifying U visa holder. And that is also consistent with, uh, regulation section 214.14 G as in draft one, which says in the first instance, the period of which someone can be granted, uh, derivative U visa status cannot exceed the period of the principal. So, so I guess, and just generally someone either has an immigrant or non-immigrant status, you can't have both statuses at the same time. So those regulations though are not based off of, uh, of a statutory grant though. Not explicitly. Okay, great. And my other question is, is there anything in the INA that allows DHS for the AG to add qualifications to U visa eligibility? I know that exists in the asylum context. And I'm just wondering if that exists in the U visa context? The best of my knowledge, no, but there is this concept in our that when Congress creates a program, but does not set forward rules addressing things like timing that by definition and agency has to fill the gap and provide those types of rules. Thank you. Judge Brass. Mr. Goldsmith, can you respond in more detail to the, um, point that was made by In other words, if the I-485 application were to be approved in a matter of weeks, your friend on the other side says the case is still not moot. What's your response to that? Well, it would, it would absolutely be moot at that point because, uh, he, he would no longer, there was no chance of him subsequently obtaining derivative U visa status. He already has a more important benefit. Yes. He would have under those circumstances, lawful permanent residence status that one of the features of temporary derivative U visa status is that after three years, you can apply for lawful permanent residence. And in this situation, he would already have it. So, uh, we don't see any way that under any standard, that that would be a, a, a live case of controversy. And we don't think the exception for capable repetition at a meeting with you would be for a couple of reasons, including that these same plaintiffs would, would have no reasonable expectation and in fact, could not face the same challenge to action again. And there's also the question whether or not this would necessarily evade review given that a U visa could be granted for a period of four years, might even be extended. I, I, I take your argument on the other side there to be that if he were, if the, if the regulation were invalidated, he could essentially be given a benefit in the process that he's currently in. And even if the I-485 is approved, he would still be essentially advantaged along the citizenship path. So what's your response to that Well, our, our point is, is no, he, he is no longer eligible for, our, our point is today, it's already moved because he's no longer eligible for derivative U visa status. That's point number one. And then point number two, there is no formal relief. The purpose of having temporary, among other things, a temporary U visa status is that it allows you to subsequently apply for a green card for a lawful permanent residence. He has already applied. He applied in April. He was, he was scheduled initially for last month. It was rescheduled to earlier this week on Monday. And that's in order to have an appointment in order to have his fingerprints collected. And that's where this, that's the situation as they stand. And there's no further relief with respect to the claims in his complaint that he can be granted at this time. And then one last question, which I'd asked of your, of the other side as well. If this regulation is invalidated on, on, does that then have an impact on any other regulations that govern in any other context, like asylum or refugee? So the primary one would be the, the T visa, which is the same, both regulations were promulgated in 2007, when it was in April, it was in September. Whether it would also create issues for asylum is, is a more difficult question. And I respect, I don't think I have an answer for that at this point. Okay. Thank you. Judge Collins. So if the spouse is married to the primary applicant, at the time the application is filed, is there any time limit on when they can then file the Supplemental A following to join? In other words, could they do it after the primary beneficiary has already gotten, has been awarded relief? So if you're asking me, can they, can they petition after, in this case, the wife has already gotten, received a green card, lawful permanent residence status, the answer is no under the regulations. I want to make sure you're understanding my question. Before she applies, say he was married to her before she applied. Correct. But then does not himself apply until after she's been granted relief as a following to join. Is, is that not permitted? Well, she would petition for the, on behalf of her husband under those circumstances. Right. But could she do that petition after she had been granted her primary, her U visa? I believe so. Although that, that principal U visa is normally limited to four years, although they can be extended. Okay. But it could be after she gets her relief. So long as the spousal relationship existed at the beginning, it could be done after. I believe so, Your Honor. Okay. So I want to walk through the statutory language. When did she become, quote, an alien described in clause one? Uh, is that upon the filing of the application or is it upon the granting of her petition? Um, I think it would be upon the filing of the petition, not the 918, I believe. How could it be on the filing of the petition? She has one of the requirements in, in, uh, is that the secretary has made determinations. She's not an alien described in clause one if the determinations have not been made. Isn't that right? Um, perhaps that's correct, Your Honor. Perhaps I'm, I'm mistaken. Okay. So if she becomes an alien described in clause one at the time of the determination, then isn't he the spouse of the alien described in clause one at that time? No, because it has to, it says it has to be with a qualifying, uh, you want, uh, relationship with a you want. And, and in our view, that means not simply that they have to have been, you know, it has to be a marriage, but there still has to be a, a, uh, they would have been married before the petition was filed. Well, I'm just walking through the language in, in U2. So we've now, we've agreed that the alien described in clause one means her at the time the secretary makes the determination. So at the time she's granted relief. And at that point, he is the spouse of the alien described in clause one. So he's right within the language of the statute. Why, why isn't that the end of this case? I apologize, John. Can you tell me which provision you're referring to? I'm sorry. I'm looking at U2, Roman two, which describes the secondary category. It says if accompanying or following to join the alien described in clause one, and then you go down to capital Roman two, which is cause she's over 21, the spouse and children of such alien. So he is the spouse of the alien described in clause one on the day that she's awarded. He was here. So I don't see why that doesn't bring them right within the language. And then the following doesn't matter because you said that you can do the following after. Well, because they're the role. So the agency's position as set forward in the regulations is that it has to be the relationship has to exist at the time of filing. And this is this is something of a different argument that the one that's been litigated to today with respect to clause little, little I double I, which is if a company were falling to join the set forth. But there are no other requirements set forth here. He just has to be the spouse of the alien described in clause one and be following to join. Well, Your Honor, we do not. We respectfully disagree. I understand that you disagree with our position on this. This is something of a new argument. And I'm sorry, I don't have a better response for you, Your Honor. Judge O'Bannon? Yes. So, counsel, I assume that like your colleague, if the I-485 application is granted, you also would like the opportunity to supplementarily brief the mootness issue? I believe that makes sense, Your Honor. All right. So, in their 2019 response to the panel's request that the party simultaneously brief the mootness issue, plaintiffs wrote that the case isn't moot because the district court could require the agency to adjudicate the I-19 Supplement A as of November 23, 2016. Does the court, the district court, have that authority? And if it's a question about whether the court does or doesn't, why wouldn't that render the case not moot, putting aside the I-485 issue? So, the district court does not have authority to do so because that would be nothing more than an advisory opinion. That would be an opinion as to a set of facts that don't exist. And we cited a case, Lee L.I. v. Carey, for the proposition in a different context, that judges are not time machines. They can't go back and adjust and adjudicate claims as they other date. So, did I interrupt you? I'm sorry. No, no, no. You didn't. Please finish. So, our view is it's simple and straightforward. The case is moot in that there's no possibility that the person can get UBESA status. That's what was at issue. They were challenging an agency decision denying derivative UBESA status, asking that it be set aside, that it would be remanded to the agency, and that it be adjudicated without regard to this regulation. And your view of that is that because she, as you address to the district court, that because the wife is an immigrant and the INA specifically excludes non-immigrant from the definition of UBESA. Judge Wofford? My only question relates to mootness, and I want to assume the scenario in which the husband's I-485 application is denied, okay? So, let me just walk you through why I'm currently thinking the case would not be moot, and then give you an opportunity to tell me why I'm wrong. As I understand it, the current application for the I-485 application is going to be decided under the standard that your opponent referenced under 1255M3, which requires a pretty demanding showing, right? I can't remember what the language is, but it's some kind of exceptional circumstances or exceptional hardship. So, it's a fairly high level in terms of the burden he has to show. My understanding, though, is that if this regulation is invalid, his request for derivative UBESA status should have already been granted, right? It should have been granted several years ago, in fact. And therefore, his I-485 application would need to be reviewed under a more forgiving standard that would be easier for him to meet. So, if his application is denied under this more demanding standard that is in place now, why couldn't the No, no, no. You need to go back and re-adjudicate his I-485 application under the standard that should have applied to him, had you not applied this invalid regulation depriving him of derivative UBESA status. So, I will try to do my best in responding to that. First of all, the I-929 petition that Ms. Tovar filed for the benefit of her husband, that has already been approved. So, the adjustment of status is, I think, a simpler issue in that adjustment of status under I-1235 M-3 is in some ways easier than adjustment of status generally, because there's many of the restrictions don't apply. It was just a matter of scheduling an appointment to collect his UBESA status. In terms of, if it were denied, it would still be moved because there would be no basis for confirming, for remanding it back to an agency to grant a benefit that is not permitted under the agency's regulations. There is no basis for granting, in the first instance, derivative UBESA status when there's no principal who has UBESA status at the time. Well, I'm asking you to forget about his getting derivative UBESA status, because I agree with you now that we're kind of further along in the ballgame than that, and the whole ballgame at this point for him is getting LPR status. My question is, if that's the thing that matters in terms of his getting meaningful relief now, if he's denied that relief under a more demanding standard than the one that should have been applied, had this regulation not been on the books way back when, why can't the district court order USCIS to go back and adjudicate his application under the correct standard? That would be the extent of the relief. It wouldn't be ordering USCIS to give him anything. It would just be to say, no, no, no, you adjudicated his I-45 application under a more demanding standard than the one that should have been applied to him. So the petition that she filed for the benefit of her husband has already been granted, so that's in the rear view mirror. If that had been denied, I think, you know, that would be a more difficult case. That would be closer to what you're describing here, but that petition was already granted, so the issue is just the adjustment of status, and there are very few obstacles to that being granted at this point in time. Judge Verghia? Yes. You know, as I read the case law, the two Ninth Circuit cases, Landon Molina and Santiago, which suggest, as has already been discussed, that the phrase accompanying or following to join requires a maritable relationship to exist when the principal petitioner is granted a demigration benefit and not when she applies for that benefit. But it appears that you, on behalf of the government, are attempting to distinguish, at least in the briefs, that the case law, that case law by stating that those two Ninth Circuit cases arose in immigrant versus the non-immigrant, you know, context. And so this is the mirror of the question that I asked your friend across the aisle, and I'm trying to figure out why this immigrant, non-immigrant distinction is a distinction or why it should be a meaningful one. Okay, so I will try to respond, but let me just say that our argument in the briefs was a little bit more than that. If you look at Santiago, for example, that addressed the question of whether or not the spouse could arrive beforehand. So there was, there was, so a statute can sometimes unambiguously reject a certain meaning but still be ambiguous with respect to other circumstances. And with the Molina case, that footnote 7 referred to a different regulation, a State Department regulation, 22 CFR 40.1C, and that regulation defined the term accompanying and then also defined following to join, and it offered slightly different definitions of the two. For the definition of accompany, it says within six months. That would actually, that really is a term of art because that's different from the ordinary meaning of the word accompany. I'm sorry, I feel like I'm not answering your question. Let me try to circle back to what you were asking. There are simply different types of programs, and one is for more temporary versus permanent relief. So do you have any authority for that? No, I don't have anything expressed on that point, although I would note that the fact that, you know, if you're looking at other contexts, there is sometimes a clear answer under the regulations. The real question is, could, in the U and T visa, the agency come up with a different answer than the answer they provided, for example, in the asylum context? And I think that's a little bit different than what the issues were before the court in those two cases that you referenced. Thank you. Judge Rawlinson. Thank you. I had similar concerns as Judge Murguia expressed, and I'm trying to pin down why, in your view, the phrase accompanying or following to join is ambiguous. Why is that ambiguous in your view? Well, to be precise, and perhaps I wasn't precise, it is silent as to when the relationship must exist. It is unambiguous in rejecting the idea that, for example, the spouse can show up and then with the hope that the principal would appear at some point in the future, but it is silent as to when the marital relationship must exist. Would you agree that in making the determination whether or not the phrase is ambiguous, we need to examine traditional rules of construction to determine if there's a settled meaning to those words? Yes, you do use traditional tools of construction, and this might be a different case if there were a common law meaning of the phrase or some other evidence indicating that it was well settled. I think the parties don't disagree on the big picture issue of the principles of statutory interpretation, but rather how they should be applied in the context of this case. Well, so what traditional rules of construction did you consult to determine whether or not there's a settled meaning to this phrase? That's a difficult question to answer because our position is simply that it's silent. We didn't see, in looking at the text or the structure, any indication of when the relationship had to exist. But under our authority, don't you have to go beyond just the words in seeking to ascertain whether or not it's ambiguous? We have to do more than just look at the words, don't we? Well, I think the words are the best indicator of what Congress intended. All right, thank you. Judge McKeon? I have two questions, one on statutory construction and the other on mootness. With respect to statutory construction, you have just indicated that it's ambiguous within the statute in terms of when the relationship must exist. And I want to turn your attention to a phrase in the statute that has not been really discussed here, and that is in Roman numeral I. Congress is quite clear that for unmarried siblings under 18 years of age on the date on which such alien applied for status under such clause. So, Congress clearly knew that it could cabin the timing of the accompanying or following to join, and it did so in Roman numeral I. It did not do so in Roman numeral II. Why doesn't that tell us what Congress was thinking? So, Congress always has the discretion to take away the agency's discretion. That is, they can always supply an answer, and the fact that they supplied an answer in one setting or one context doesn't mean that it's still possible that they intended for the agency to fill the gap in some other context. That is, I'm sorry. Anything is possible, Mr. Goldsmith, but the fact is that they use very explicit language here, and based on your explanation, we would not give any weight to that explicit language. Is that a fair statement of your position? Well, I think you would, of course, consider other language and other provisions. We just don't think that that you would look at other language to see if it supplied an answer. Thank you, and on the mootness question, I recognize that the spouse here is not going to have an opportunity to try again in some other context, but would this fall under an exception to mootness of capable of repetition and really inability to adjudicate that? It's been seven years at this point since the application. There's really tens of thousands of U visa applications that are stacked up before the agency, and given the short temporal scope of a U visa and the fact that it takes a long time to get it adjudicated, not to mention get up to the agency and then to the court of appeals, would that exception not be appropriate to invoke here? So the government's view is no, that that exception only applies in quote exceptional circumstances, and there's kind of two parts to that. Part one would be there has to be a reasonable expectation that it will reoccur for these particular plaintiffs, and part two is that it would evade review, meaning it would necessarily evade review, and although that's a little bit of a closer call, since we're talking about a four-year period, we don't think it would necessarily evade a review. Well, that's really my point. That was the question I'm asking. Would it necessarily evade review? Well, it's a four-year period, but it's not really a four-year period given the time in which it takes to actually process the application for individuals to marry or not marry for the decision to be made and then come up to the court of appeals. So is seven years a reasonable period in terms of that? So, you know, I'm not sure what to say other than I think we're in agreement that part of the test is whether or not it is necessarily evades review. You know, you correctly state that it might be less than four years, and so putting aside whether or not that four years could be extended, the issue as we see it is we don't think it would necessarily, although in some cases or perhaps even many cases, it would evade review. So that's one of the kind of factors that we think was to why it should not, this exception should not apply. I think I understand your position. Thank you. I want to make sure Judge Graber doesn't have a question. I have. I haven't all been answered by this point, so thank you. And I just have one question for you, which is your opponent has made the point that at the time the regulation was promulgated, the only reason given was the fact that the statute required it. I understand your litigating position, but doesn't that indicate the agency at the time about the statute was not ambiguous? No, I don't think so. And if anything, as I mentioned earlier, there's this issue of we've got a 2007 regulation, and then in 2013, Congress is reauthorizing the act, amending the UBISA, and they're leaving this, meaning this regulation undisturbed. So that's one thing that kind of cuts against that. And the other point is it's not necessarily the case that the rule or the preamble would explain the rationale for timing provisions. That's not necessarily the case. And so, what we have is we have a regulation that provides the permissible answer to the question of when the time of provision, when the marital relationship must exist. Thank you, counsel, and I will hear rebuttal from Mr. Smith. Thank you. And Mr. Goldsmith. Mr. Smith, you're still muted. I'm sorry. Thank you, Your Honor. Just briefly, the mootness question, I think, is the big question at this point that I don't think is at all clear. I would just point, because my colleague talked about some things weren't raised in the complaint, but under Supreme Court law, the ability to grant relief has to be impossible for the case to be moot. And so, there are various things a district court could potentially do that wouldn't be impossible, that would be beneficial to our clients. And so, with the case, and again, right now, he has no status. He hasn't been granted anything. With regards to when she was granted her lawful, when his wife, the principal was granted the lawful permanent residence status, that didn't cut off his ability to obtain derivative visa status. Again, going right back to the statute, and also looking at the asylum and the refugee context, which are similar. We really haven't focused too much, and I think we should be, this is not just a benefit that we're asking for, Mr. Alonzo. The purpose behind this statute, Congress wanted to assist law enforcement to prosecute serious crimes. And anything that a regulation that the agency puts forward that may discourage victims from coming forward out of fear that they or their family members are subject to being deported is going to discourage them from cooperating with law enforcement, which means serious crimes may go unpunished, serious criminals may remain at large, and that is the exact opposite. We know that is the exact opposite of what Congress intended when they passed this new visa statute. I think that's all I have, unless anyone has any other questions. Thank you for your arguments today. The case just started to be submitted for decision, and we will be in recess for a few minutes and reassemble virtually in the right way of government. Thank you, counsel. Very helpful. Thank you, Your Honor. This Court, for this session, stands adjourned.
judges: Thomas, McKeown, Graber, Rawlinson, Callahan, Murguia, Watford, Bennett, Collins, Bress, Bumatay